UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
192 MORGAN REALTY, LLC, *et al.*,

              Plaintiffs,                          REPORT AND
                                                                                        RECOMMENDATION
   -against-                                      20 CV 3627 (RPK)(RML)

AQUATORIUM, LLC, *et al.*,

              Defendants.
---------------------------------------------------------------X
LEVY, United States Magistrate Judge:

       By order dated August 13, 2021, the Honorable Rachel P. Kovner, United States District Judge, referred the motion to dismiss of intervenor defendant Clear Blue Waters Project LLC ("CBWP") to me for report and recommendation. Two other motions remain pending in this case and were also referred to me for report and recommendation. For the reasons stated below, I respectfully recommend that CBWP's motion to dismiss be denied in part and that plaintiffs be given leave to amend their complaint.

**BACKGROUND AND FACTS**

       Plaintiffs 192 Morgan Realty, LLC and Morgan Williamsburg, LLC ("plaintiffs") commenced this action on August 12, 2020 against defendants Aquatorium, LLC, Moretti Designs, LLC, and Jonathan Yaney (collectively, "defendants"), the purported owners of the Vessel Schamonchi (the "Vessel"), a 129-foot pleasure craft identified as IMO Ship No. 594912. (Complaint, dated Aug. 12, 2020 ("Compl."), Dkt. No. 1). The Vessel is docked at plaintiffs' premises and defendants have allegedly failed to pay monies owed for dockage pursuant to the parties' license agreement. (Id. ¶¶ 11-14.) As such, plaintiffs sought damages against defendants amounting to $42,813.84 plus interest, costs, expenses, and attorney's fees. (Id. ¶

15.) Plaintiffs also requested, pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule B"), the issuance of Process of Maritime Attachment against the Vessel. (Id. ¶ 16.)

Shortly after commencing this action, plaintiffs filed an *ex parte* motion pursuant to Supplemental Rule B for the issuance of a warrant to the U.S. Marshal to attach the Vessel to secure plaintiffs' maritime lien for the unpaid dockage fees. (Motion for Issuance of Warrant, dated Aug. 18. 2020, Dkt. No. 6.) On August 20, 2020, Judge Kovner found that the conditions of Rule B were met and ordered the Clerk of the Court to issue Process of Maritime Attachment against the Vessel up to at least the amount demanded by plaintiffs. (Ex Parte Order for Process of Maritime Attachment, dated Aug. 20, 2020, Dkt. No. 7.) Judge Kovner noted that the order would automatically expire sixty days from the date of issuance— on October 19, 2021—if the Vessel was not restrained pursuant to the order, and that any extensions of time should be made by letter to the court. (Id.)

Plaintiffs filed the application for Writ of Warrant for Arrest of the Vessel on August 21, 2020. (Application for Writ of Warrant for Arrest of Vessel, dated Aug. 20, 2020, Dkt. No. 8.) By letter dated October 1, 2020, plaintiffs inquired with the Clerk's Office about the status of the warrant. (Letter, dated Oct. 1, 2020, Dkt. No. 12.) The Clerk's Office issued the warrant for arrest of the Vessel on October 23, 2020. (Warrant for Arrest of Vessel, dated Oct. 23, 2020, Dkt. No. 13.) On October 23, 2020, plaintiffs sent a letter to the U.S. Marshal requesting that they execute the warrant for arrest of the Vessel. (Letter, dated Oct. 23, 2020, Dkt. No. 14.)

On November 6, 2020, plaintiffs filed a motion to appoint a substitute custodian in anticipation of the U.S. Marshal seizing the Vessel. (Motion to Appoint Custodian, dated

Nov. 6, 2020, Dkt. No. 15.)  Plaintiffs sought for Newtown Williamsburg Development, LLC to be named custodian of the Vessel until further order of this court because "the United States Marshal [wa]s unable to perform or to have performed at a comparable rate" the necessary services to safekeep the Vessel.  (Id. ¶¶ 2-4).  On November 10, 2020, Judge Kovner granted plaintiffs' motion to appoint Newtown as the custodian of the Vessel.  (Order, dated Nov. 10, 2020; see also Order, dated Nov. 20, 2020, Dkt. No. 17.)

On January 26, 2021, plaintiffs wrote to the court explaining: "Plaintiffs realized after the vessel's arrest that the Attachment Order automatically expired in sixty (60) days, to wit – October 20, 2020.  Through inadvertence and oversight, for which the undersigned takes responsibility, Plaintiffs failed to seek an order extending the Attachment Order."  (Letter, dated Jan. 26, 2021, Dkt. No. 18.)  In the Letter, plaintiffs requested that the Attachment Order be extended *nunc pro tunc* through and including January 26, 2021.  (Id.)  Plaintiffs also noted that the U.S. Marshal scheduled the arrest of the Vessel on January 26, 2021.  (Id.)

Also on January 26, 2021, out-of-state attorney Jonathan Corbett filed an emergency motion seeking admission *pro hac vice* to represent Intervenor CBWP and proposing a motion to intervene and vacate.  (Emergency Motion to Appear Pro Hac Vice, dated Jan. 26, 2021, Dkt. No. 19.)  Judge Kovner granted the motion and directed the parties to confer among themselves and propose a briefing schedule.  (Order, dated Jan. 27, 2021.)

On February 3, 2021, CBWP moved to intervene and vacate orders.  (Motion to Intervene and Vacate, dated Feb. 3, 2021, Dkt. No. 23.)  CBWP explained that the Vessel is not owned by any of the named defendants because it was sold to CBWP on July 16, 2019.  (Id. at 1; Bill of Sale, attached as Ex. A to the Motion to Intervene and Vacate, Dkt. No. 23-1.)  CBWP also noted that "[t]he named defendants were not the owners immediately prior to CBWP, but,

3

upon belief, the owners of the [Vessel] before that." (Motion to Intervene and Vacate at 2 n.3.) Thus, CBWP argued that the Vessel's owner "has not been served and the procedures invoked under Rule B . . . do not apply because, to the extent that the plaintiffs may have a claim, the proper defendant is found within the district." (Id. at 1.) Accordingly, CBWP requested that this court: (1) vacate the warrant for arrest of vessel, to the extent that it is still in effect; (2) deny as moot the letter request to extend the Attachment Order; (3) vacate the custodian appointment order; and (4) order the U.S. Marshal and any custodian in possession of the Vessel to release the Vessel to CBWP. (Id. at 3-4.)

In response to CBWP's motion, plaintiffs submitted an affirmation "in further support of Plaintiffs' letter motion to extend the Ex Parte Order of Maritime Attachment entered herein on August 20, 2020 and ratifying the U.S. Marshal's arrest of the subject vessel[1] on January 26, 2021." (Affirmation in Response to Intervene and in Further Support of Motion to Extend Ex Parte Order for Process of Maritime Attachment, dated Feb. 12, 2021, Dkt. No. 24.) Plaintiffs also consented to CBWP's motion to intervene as a defendant and stated that they would "move pursuant to Rule 15 to amend their complaint to assert the Court's jurisdiction under Rule C now that CBWP is a party within the District." (Id. at 2 n.2.)

On February 16, 2021, plaintiffs moved for a pre-motion conference seeking leave to file an amended complaint. (Motion for Pre-Motion Conference, dated Feb. 16, 2021, Dkt. No. 25.) Plaintiffs proposed amending the complaint to: (1) add CBWP and the Vessel as defendants; (2) seek attachment of the Vessel pursuant to Supplemental Admiralty Rule C, rather than Rule B, on account of CBWP's presence in the District; and (3) assert plaintiff's current

---

[1] According to plaintiff's Affirmation, the U.S. Marshal for the Eastern District of New York arrested the Vessel on January 26, 2021 pursuant to the Attachment Order and delivered possession of the Vessel to the custodian. (Id. at 4.)

4

maritime lien claim for unpaid dockage fees. (Id. at 2; see also Proposed Amended Complaint, dated Feb. 9, 2021, Dkt. No. 25-1.)

On February 17, 2021, Judge Kovner referred CBWP's motion to intervene and vacate orders as well as plaintiffs' motion for a pre-motion conference to me. (Orders Referring Motions, dated Feb. 17, 2021 and Feb. 18, 2021.) At the status conference on March 16, 2021, I granted CBWP's motion to intervene and deferred ruling on the motion to vacate. (See Minute Entry, dated Mar. 16, 2021.) I also gave plaintiffs leave to file their amended complaint. (Id.)

On March 22, 2021, plaintiffs filed a Motion for Order Authorizing Warrant for Arrest of Vessel Pursuant to Admiralty Rule C ("Supplemental Rule C") and attached the Amended Complaint to the motion. (Motion for Writ Order Authorizing Warrant for Arrest of Vessel Pursuant to Admiralty Rule C, dated Mar. 22, 2021, Dkt. No. 28; Amended Complaint, dated Feb. 9, 2021 ("Am. Compl."), Dkt. No. 28-2.) In their motion, plaintiffs seek the arrest of the Vessel pursuant to Supplemental Rule C and request that the Vessel remain in the U.S. Marshal's possession and control pursuant to the previously issued warrant and arrest of the Vessel on January 26, 2021. (Memorandum of Law in Support of Motion Pursuant to Supplemental Rule C for Arrest of Vessel, dated Mar. 22, 2021, Dkt. No. 28-7, at 1.) Judge Kovner referred plaintiffs' motion to me for report and recommendation. (Order Referring Motion, dated Mar. 23, 2021.)

Then, on April 7, 2021, CBWP filed a motion to dismiss. (Motion to Dismiss, dated Apr. 7, 2021, Dkt. No. 31.) Judge Kovner referred defendant's motion to me for report and recommendation. (Order Referring Motion, dated Aug. 13, 2021.)

## DISCUSSION

### I. Motion to Dismiss

I will first address the outstanding motion to dismiss. CBWP moves to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) and (6) on the grounds that "a parallel state court proceeding requires Colorado River abstention" and that plaintiffs have "failed to state a claim for which relief can be granted because New York state law . . . presently does not allow for the enforcement of past-due rents as a response to the coronavirus pandemic." (Motion to Dismiss at 1-2.)

A. Standard of Review

"A motion to dismiss based on the Colorado River abstention doctrine is assessed under the same standard as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Windward Bora, LLC v. Bank of New York Mellon as Tr. for Certificateholders of Cwalt, Inc., Alternative Loan Tr. 2007-5CB, Mortg. Pass-Through Certificates, Series 2007-5CB, No. 19 CV 858, 2020 WL 7042761, at *2 (E.D.N.Y. Nov. 30, 2020) (citing United States v. Blake, 942 F. Supp. 2d 285, 292 (E.D.N.Y. 2013)). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "'In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction.'" Collins v. United States, 996 F.3d 102, 119 n. 1 (2d Cir. 2021) (quoting Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016)). In addition, "[a] district court may resolve a motion to dismiss for lack of

6

subject-matter jurisdiction by referring to evidence outside the pleadings." Gjidija v. United States, 848 F. App'x. 451, 454 (2d Cir. 2021) (citing Makarova, 201 F.3d at 113).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To avoid dismissal, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In resolving a motion to dismiss, the court "must accept as true all well-pled factual allegations" and "draw all reasonable inferences in the plaintiff's favor." Doe v. Indyke, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing Steginsky v. Xcelera Inc., 741 F.3d 365, 368 (2d Cir. 2014)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, "[p]leadings that offer only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Twombly, 550 U.S. at 555.

B. Colorado River Abstention

CBWP first argues that this case should be dismissed pursuant to the Colorado River abstention doctrine because a parallel state-court proceeding exists in Kings County Civil Court, Landlord and Tenant Division, captioned 192 Morgan Realty LLC v. Aquatorium, Inc., Case No. LT-303157-20/KI. (Motion to Dismiss at 4.) Plaintiffs argue that there is no longer a pending, parallel state court proceeding because plaintiffs filed a Notice of Discontinuance of the state court holdover proceeding. (Memorandum in Opposition to Motion to Dismiss, dated Apr. 19, 2021 ("Opp. to Motion to Dismiss"), Dkt. No. 33-7, at 9.)

7

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. at 817 (quotation marks and citations omitted). "In determining whether abstention is appropriate, courts must 'ascertain whether there exist exceptional circumstances' sufficient to 'justify the *surrender* of that jurisdiction.'" Grover v. Sattar, No. 18 CV 2402, 2019 WL 8356587, at *7 (E.D.N.Y. Dec. 16, 2019) (emphasis in original) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983)). The "burden of persuasion rest[s] on the party opposing the exercise of federal jurisdiction." Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F. 2d 205, 210 (2d Cir. 1985).

When deciding whether to abstain under Colorado River, a court engages in a two-step inquiry. First, a court must determine that the federal and state court cases are "parallel." Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998). Cases are parallel "when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." Nat'l Union Fire Ins. Co. of Pittsburgh v. Karp, 108 F.3d 17, 22 (2d Cir. 1997). "[T]wo actions are parallel when there is a substantial likelihood that the state court litigation will dispose of the claims presented in the federal case." Windward Bora, LLC, 2020 WL 7042761, at *3 (quotation marks and citation omitted). "Significantly, any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." Grover, 2019 WL 8356587, at *7 (quotation marks and citation omitted).

8

Second, if a court determines that the federal and state actions are parallel, it next considers the following factors: (1) whether the controversy involves a res over which one of the courts has already assumed jurisdiction; (2) whether the federal forum is less inconvenient for the parties; (3) whether dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's rights. See Woodford v. Cmty. Action Agency of Greene Cty., Inc., 239 F.3d 517, 522 (2d Cir. 2001).

Here, I find there is no parallel state action. Plaintiffs voluntarily dismissed their state court case on April 8, 2021. (Opp. to Motion to Dismiss at 9; Notice of Discontinuance, attached as Ex. 2 to Opp. to Motion to Dismiss, Dkt. No. 33-2.) CBWP contends that because plaintiffs dismissed the state court case the day after the motion to dismiss was filed, this court should still abstain from exercising jurisdiction under the Colorado River doctrine because a parallel state action existed at the time the motion to dismiss was filed. (Reply to Response to Motion to Dismiss, dated Apr. 30, 2021, Dkt. No. 34, at 2-3.) However, in similar situations in which a state court action was voluntarily dismissed after filing of a motion to dismiss in federal court, courts in this Circuit have found that there is no proper basis for abstention. See, e.g., Louis Hornick & Co. v. Darbyco, Inc., No. 12 CV 5892, 2013 WL 3819643 (S.D.N.Y. July 23, 2013); Allstate Ins. Co. v. Elzanaty, 916 F. Supp. 2d 273 (E.D.N.Y. 2013). Accordingly, I respectfully recommend that CBWP's motion to dismiss on Colorado River abstention grounds be denied.

C. <u>Failure to State a Claim</u>

CBWP next argues that plaintiffs "have failed to state a claim for which relief can be granted because New York state law . . . presently does not allow for the enforcement of past-due rents[.]" (Motion to Dismiss at 2.) Plaintiffs contend that their "claim is not one to recover rents but rather to enforce a maritime lien for necessaries –dockage fees – to dock the Vessel at Plaintiffs' Property." (Opp. to Motion to Dismiss at 10.) CBWP maintains that "[t]he current policy of the state is that no actions regarding the non-payment of rent may even be filed, let alone enforced by a court." (<u>Id.</u> at 7 (citing New York Executive Order 202.28).) Thus, according to CBWP, this case should be dismissed because the lien, if it has even arisen, "is presently unenforceable." (<u>Id.</u>)

The focus of both parties' arguments is on whether this matter may presently even be brought given New York State's eviction moratorium. The COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 ("CEEFPA"), 2020 N.Y. Laws Ch. 381, was enacted on December 28, 2020. The most recent iteration of the eviction moratorium was signed into law on September 2, 2021.[2] <u>See</u> L. 2021, c. 417 ("the Act"). Part B of the Act addresses commercial eviction and foreclosure protections. According to the Act, "[n]o commercial tenant shall be

---

[2] In <u>Chrysafis v. Marks</u>, the Supreme Court enjoined the enforcement of Part A of CEEFPA – the residential eviction moratorium – because it precluded a landlord from contesting a tenant's self-certification of financial hardship. <u>Chrysafis v. Marks</u>, 141 S. Ct. 2482 (2021). The Court held that Part A violated the "longstanding teaching that ordinarily 'no man can be a judge in his own case' consistent with the Due Process Clause." <u>Id.</u> (quoting <u>In re Murchison</u>, 349 U.S. 133, 136 (1955)). The Court's order did not enjoin the enforcement of the Tenant Safe Harbor Act ("TSHA"), which "instructs New York courts to entertain a COVID-related hardship defense in eviction proceedings." <u>Id.</u> (citing 2020 N.Y. Laws ch. 127, § 2(2)(b)). The New York Legislature then enacted chapter 417 to restore the moratorium and address the due process concerns raised in <u>Chrysafis</u>.

10

removed from possession prior to January 15, 2022, except by an eviction proceeding." Id. at Part B, Subpart A §2. It further provides:

> In any eviction proceeding in which an eviction warrant or judgment of possession or ejectment has not been issued, including eviction proceedings filed on or before March 7, 2020, if the tenant provides a hardship declaration to the petitioner or plaintiff, the court, or an agent of the petitioner or plaintiff or the court, the eviction proceeding shall be stayed until at least January 15, 2022.

Id. at Part B, Subpart A § 5. An "eviction proceeding" is defined as "a summary proceeding to recover possession of real property under article seven of the real property actions and proceedings law relating to a commercial unit or any other judicial or administrative proceeding to recover possession of real property relating to a commercial unit." Id. at Part B, Subpart A § 1. Real property is defined as "lands, tenements and hereditaments and chattels real[.]" N.Y. Real Prop. Acts. Law § 111(2) (McKinney).

If the eviction moratorium applied to this case—and this court remains skeptical of the moratorium's applicability—this court could certainly at least review the matter. Under the moratorium, a petitioner must have a forum to contest a tenant's assertions of financial hardship and, if the showing is persuasive, courts are directed to stay the matter until at least January 15, 2022.

However, before reaching the question of the current enforceability of plaintiffs' claims and the moratorium, I must first consider the sufficiency of plaintiffs' pleadings. Supplemental Rule C is available to bring an action *in rem* to enforce a maritime lien. Supplemental Rule C (1). Under Rule C, plaintiffs must bring a verified complaint that: (1) "describe[s] with reasonable particularity the property that is the subject of the action;" and (2) "state[s] that the property is within the district or will be within the district while the action is pending." Supplemental Rule C (2). Additionally, the complaint must be sufficiently detailed to

11

enable the defendant to undertake an investigation of the facts and develop its response without seeking a more definite statement. See Supplemental Rule E (2)(a). Therefore, the pleading requirement is heightened from what Fed. R. Civ. P. 8 usually requires.

"In order to avail itself of the device of maritime arrest, a plaintiff has the burden of showing that it is entitled to a maritime lien." Bay Casino, LLC. v. M/V Royal Empress, 20 F. Supp. 2d 440, 448 (E.D.N.Y. 1998). The Commercial Instruments and Maritime Liens Act defines the circumstances under which a party is entitled to a maritime lien. It states that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel." 46 U.S.C. 31342(a)(1). Necessaries are defined to include "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). Dockage constitutes a "necessary." Robbie's of Key W. v. M/V Komedy III, 470 F. Supp. 3d 1264, 1268 (S.D. Fla. 2020).

After reviewing plaintiffs' pleadings, I find that they are insufficient. Plaintiffs fail to properly allege the requisite facts and they fail to include an appropriate request for relief.

First, plaintiffs seek to bring "an action quasi in rem pursuant to Supplemental Rule C for maritime attachment of the Vessel owned by Defendants situated in this District." (Am. Compl. ¶ 1.) Rule C provides for an *in rem* action, not a "quasi in rem action." See Supplemental Rule C (1).

Second, the amended complaint is titled "Amended Verified Complaint for Maritime Attachment" and later plaintiffs state that this is an action for "maritime attachment of

the Vessel owned by Defendants situated in this District." (Am. Compl. ¶ 1.) Rule C allows for "a warrant for the arrest of the vessel," not attachment.[3] See Supplemental Rule C (3)(a)(i).

Third, plaintiffs never explicitly allege the existence of a maritime lien; nor do they ever specifically state that they are seeking to enforce a maritime lien. In fact, the term does not even appear in the amended complaint. (See Am. Compl.) Furthermore, plaintiffs do not allege that necessaries—i.e., the dockage fees—were provided on the order of CBWP. The existence of a maritime lien is one of the requirements for a Rule C claim. See Supplemental Rule C (1). See also Bay Casino, LLC., 20 F. Supp. 2d at 448 ("It is well-settled that although arrest of maritime property is a remedy available within the maritime jurisdiction, it requires an underlying maritime cause of action supporting a maritime lien in the property arrested. Thus, the only basis for the arrest of a vessel in rem is the enforcement of a maritime lien in favor of the party suing the vessel and seeking the arrest.")

Finally, plaintiffs allege that they "are presently owed $227,813.84 plus interest, costs, expenses and attorneys fees." (Am. Compl. ¶ 21.) According to Exhibit B, which is attached to the amended complaint, the monetary figure also includes late fees, which are not necessaries. See Robbie's of Key W. v. M/V Komedy III, 470 F. Supp. 3d at 1268 (noting that a

---

[3] "Attachment does in many respects resemble arrest. In each proceeding the vessel is seized and it may later be sold to satisfy a judgment. In each, the vessel itself may be released and other security substituted. Nevertheless, not only do the issues in the two actions differ; the basic theory on which each is brought is different." Belcher Co. of Alabama v. M/V Maratha Mariner, 724 F.2d 1161, 1165 (5th Cir. 1984). Under Rule C, with an *in rem* action for arrest, "the owner bears no personal liability" and "[t]he vessel is sold solely to satisfy the lien." Id. "If the proceeds of the sale are inadequate, there is no liability on the owner's part for the residue." Id. "In the attachment action, the object of the action is a personal judgment for the full sum due. The vessel is seized only to compel the owner's appearance by subjecting to the court's control property within its territorial jurisdiction. If the proceeds of sale of the vessel do not satisfy the judgment, the owner remains liable for the balance of the debt." Id.

late fee for owed dockage is not a necessary and therefore not a part of the maritime lien). Additionally, attorney's fees are not necessaries.  See Patricia Hayes & Assocs., Inc. v. M/V BIG RED BOAT, II, No. 00 CV 6925, 2002 WL 1163555, at *7 (S.D.N.Y. May 31, 2002), aff'd sub nom. Patricia Hayes Assocs., Inc. v. Cammell Laird Holdings U.K., 339 F.3d 76 (2d Cir. 2003) (finding that attorney's fees are not necessaries under the maritime lien statute) (citing Gulf Marine and Indus. Supplies, Inc. v. Golden Prince M/V, 230 F.3d 178, 180-181 (5th Cir. 2000); Bradford Marine, Inc. v. M/V "Sea Falcon", 64 F.3d 585, 588-589 (11th Cir. 1995); American Oil Trading, Inc. v. M/V Sava, 47 F. Supp.2d 348, 352 (E.D.N.Y. 1999); James Creek Marina v. Vessel My Girls, 964 F. Supp. 20, 23 (D.D.C.1997)).  Thus, plaintiffs have not stated appropriate grounds for the relief sought.

Accordingly, I respectfully recommend that plaintiffs be given leave to again amend their complaint in light of the above discussed deficiencies.  This court urges plaintiffs to carefully craft their second amended complaint given that some of these deficiencies were already raised by CBWP before plaintiffs filed their first amended complaint.  (See Reply to Plaintiffs' Response to Time-Sensitive Motion to Intervene and Vacate Order, dated Feb. 16, 2021, Dkt. No. 26, 2-4.)  This court will be disinclined to grant plaintiffs yet another attempt to properly plead their case.

## CONCLUSION

For the reasons explained above, I respectfully recommend that CBWP's motion to dismiss be denied in part and that plaintiffs be given leave to amend their complaint.  I decline to reach the other two outstanding motions in this case until CBWP's motion to dismiss is fully resolved.  Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Kovner and to my chambers, within fourteen (14) days.

Failure to file objections in a timely manner may waive a right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72.

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      November 3, 2021

15