IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

192 Morgan Realty, LLC *et al.,*
*Plaintiffs/Crossclaim Defendants*

v.

Aquatorium, LLC *et al.,*
*Defendants*

*- and -*

Clear Blue Waters Project, LLC,
*Intervenor-Defendant/Crossclaim Plaintiff*

---

Case No. 1:20-CV-03627-RPK-RML

## MOTION FOR SANCTIONS AGAINST 192 MORGAN REALTY, LLC AND MORGAN WILLIAMSBURG, LLC

*(Dispositive Motion[1])*

---

[1] By unnumbered order of U.S. District Judge Kovner on January 11th, 2023, the "motion for sanctions on plaintiffs based on discovery misconduct is referred to Judge Levy." By oral order of U.S. Magistrate Judge Levy on January 11th, 2023, leave to file excess pages was granted and opposition to this motion is due in 3 weeks.

## **Table of Contents**

I.   Introduction ........................................................................................................ 4

II.  Safe Harbor Notice ............................................................................................ 4

III.  Standard of Review ............................................................................................ 5

IV.  Factual & Procedural History ........................................................................... 7

V.  Argument ......................................................................................................... 11

  A.  Landlords Were Intentionally Dishonest with the Court in Order to Obtain Arrest of CBWP's Property Without Notice ................................................................. 11

  B.  Landlords Were Intentionally Dishonest with the Court Regarding the True Individual Behind Their LLCs and Filed Affidavits Constituting Perjury ................................. 13

  C.  Landlords Were Intentionally Dishonest with the Court in the Verifications of Their Complaints, Their Motions for Substitute Custodianship, and Their Supposed Need for Interlocutory Sale of CBWP's Property ........................................................... 18

  D.  The Claim of Morgan Williamsburg, LLC is Frivolous .................................... 23

  E.  Counsel for Landlords Improperly Guided a Deponent .................................... 25

  F.  Landlords Have Refused to Follow the Rules of the Court Throughout This Case ......... 26

  G.  Serious Sanctions are Appropriate When a Party Repeatedly Misleads the Court............ 28

VI.  Conclusion ...................................................................................................... 32

## Table of Authorities

**Cases**

*Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991) ................................................ 6

*Hao Xin Liu v. Millenium Motor Sports, LLC*, 17-CV-6438 (E.D.N.Y. Nov. 30th, 2020) .......... 28

*Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388 (2nd Cir. 1989) ............................ 5

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2nd Cir. 2012) .................................................................................................. 5

*Tennenbaum v. Madame Paulette LIC, LLC*, 20-MC-186 (E.D.N.Y. Apr. 28th, 2021) .............. 29

*U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2nd Cir 2004) ............................... 29

*Xu v. Umi Sushi, Inc.*, No. 15-CV-4710 (S.D.N.Y., June 21st, 2016) ............................................ 6


**Rules**

Fed. R. Civ. P. 33 ................................................................................................ 18
Fed. R. Civ. P. 37 ............................................................................... 4, 26, 30
Fed. R. Civ. P. 11 ....................................................................................... *passim*
Fed. R. Civ. P. 12(f) ........................................................................................... 25
Fed. R. Civ. P. 16(f) ...................................................................................... 5, 29
Fed. R. Civ. P. 26 ..................................................................... 13, 17, 18
Fed. R. Civ. P. 30(c)(2) ..................................................................................... 26
Fed. R. Civ. P. 37 ................................................................................................ 5
Fed. R. Civ. P. 43(c) ......................................................................................... 27
Fed. R. Civ. P. 56(c)(4) ..................................................................................... 27
Fed. R. Civ. P. Rule B .............................................................................. 8, 12, 20
Fed. R. Civ. P. Rule C(2)(a) ...................................................................... 20, 30
F.R.E. 408 ......................................................................................................... 27
Kovner, J., Individual Practice Rules ............................................................... 27
N.Y. R. Prof'l C. 3.3a ........................................................................................ 17
N.Y. R. Prof'l C. 4.1 .......................................................................................... 18
N.Y.E.D. L.R. 56.2 ............................................................................................ 27

## I.     Introduction

Throughout the two-and-a-half years of litigation in this case, Plaintiffs/Crossclaim Defendants 192 Morgan Realty, LLC and Morgan Williamsburg, LLC (hereafter, "Landlords") have struggled with the rules of the Court, the procedural law governing *in rem* actions, and the substantive law required to bring a successful claim.  Discovery has uncovered that Landlords have also struggled with honesty – both in dealings between counsel and in dealing with the Court – and that the claims of Morgan Williamsburg, LLC are frivolous.

"Without trust, there is nothing."  The misconduct of Landlords is sufficiently serious to warrant terminating sanctions and attorney's fees (and indeed, *requires* that the Second Amended Complaint be stricken because it is supported with a fraudulent verification), and Intervenor-Defendant/Crossclaim Plaintiff Clear Blue Waters Project, LLC ("CBWP") hereby asks the Court to strike both Landlords' Second Amended Complaint and its Answer to CBWP's counterclaims without leave to re-file, vacate the warrant of arrest relating to the defendant property, enter default judgment on behalf of CBWP on its counterclaims, award fees and costs to CBWP, and any other such relief as the Court may deem proper, pursuant to Fed. R. Civ. P. 11, 16(f), and 37 and the Court's inherent powers.

## II.     Safe Harbor Notice

Rule 11(c)(2) contains a "safe harbor" provision, requiring a party seeking sanctions under Rule 11 to give the party on the receiving end of a sanctions motion notice of the allegedly improper filing and 21 days to cure it.  Plaintiff served a safe harbor draft of this motion, enumerating all of the incidents for which Rule 11 relief is sought and the basis for their violation

of that rule, upon defense counsel on December 16th, 2022; the safe harbor provision has been satisfied.

### III.   **Standard of Review**

Fed. R. Civ. P. 11(b) treats an attorney's signature on a document as a certification that it is being filed in good faith.  Rule 11(c)(1) allows a sanction for breaking Rule 11(b), and Rule 11(c)(4) spells out possible sanctions to include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

When Rule 11 sanctions are sought for frivolous filings, sanctions are appropriate "where it is clear that: (1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands." *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2nd Cir. 1989).  "The standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd*., 682 F.3d 170, 177 (2nd Cir. 2012).

Fed. R. Civ. P. 16(f) provides sanctions against one who "does not participate in good faith in [a pretrial] conference."  For a violation of Rule 16, at a minimum, the Court must "order the party, its attorney, or both to pay the reasonable expenses-including attorney's fees-incurred

because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Rule 16(f)(2).

Fed. R. Civ. P. 37 provides for sanctions in the discovery context. Rule 37(c)(1) provides that when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." Those listed orders include striking pleadings, dismissals, and default judgments. Rule 37(b)(2)(A).

Finally, using "its inherent sanctions power, a district court has the authority to sanction an attorney for making false statements to the court." *Xu v. Umi Sushi, Inc.*, No. 15-CV-4710, *7 (S.D.N.Y., June 21st, 2016). "If a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 46 (1991) (*cleaned up*).

## IV. <u>Factual & Procedural History</u>

In 2014, 192 Morgan Realty, LLC purchased[2] a small marina in Brooklyn, New York, which was occupied by the defendant *rem* in this action (hereafter, the "Vessel").  Exhibit A, Abraham Deposition, 16:10.  According to documents provided by Landlords during discovery, a "license agreement[3]" governing the Vessel's use of the dock was assigned to 192 Morgan Realty, LLC contemporaneous with the transfer of land.  Exhibit B, Landlords' First Discovery Response, pp. 26, 27.

The Vessel has not moved from the dock since 192 Morgan Realty, LLC purchased the real property.  Second Amended Compl. (ECF No. 39; hereafter, "SAC"), ¶¶ 17, 27.  It did change ownership at least once: in 2019, it was purchased by CBWP.  *Id*., ¶ 19.  No formal assignment of the license was made in writing; however, each month after the purchase, CBWP, through its principal owner Lindsay Cooper, directly paid the rent that would have been due under the license agreement, in cash, to Landlord's agent, Aaron Abraham.  Abraham Depo., 21:15-25, 22:3.

In 2020, problems arose for both CBWP and Landlords.  On CBWP's end, the Vessel was injured by falling concrete blocks from a neighboring tenant that also had a license agreement with Landlords. Answer with Counterclaims (ECF No. 40), ¶ 19.  Further, CBWP's access to the Vessel was regularly obstructed by flooding and hazardous conditions, and eventually, by a gate built to

---

[2] It appears this purchase was from another entity owned by the same owner(s) as 192 Morgan Realty, LLC.  It is unclear when these owner(s) first gained control of the property, but it matters not for the purposes of this case.

[3] CBWP maintains that this document, despite its characterization, is a legally a "lease" agreement under New York law, while Landlords insist it is merely a "license" agreement.  However, this matters not for the purposes of this motion and CBWP adopts the term "license" for this motion to avoid raising superfluous issues.

prevent nighttime access.  *Id.*, ¶ 28.  On Landlords' end, CBWP stopped paying rent.  SAC, ¶ 23 (rent paid until March 2020).

While New York had an eviction moratorium in place due to the pandemic outbreak in 2020, Landlords sought their rent in federal court under the Court's maritime jurisdiction.  A Verified Complaint was filed against the Vessel and the owners listed on the license agreement, but not CBWP.  ECF No. 1.  This complaint swore under penalty of perjury – via a verification of one Helen Schwartz – that the named defendants were the owners of the Vessel, that they were located out-of-state, and, based on that representation, they invoked jurisdiction under Fed. R. Civ. P. B.  *Id.*  They then moved the Court to obtain a warrant for the arrest of the Vessel and appoint a substitute custodian, based upon an affidavit by Aaron Abraham, and this motion was granted. ECF Nos. 6, 8, 15, 17, and unnumbered order dated November 10th, 2020.  Several months later, Landlords did cause the U.S. Marshal to arrest the Vessel.  ECF No. 18.

This arrest was CBWP's first legal notice of the pendency of this action, and CBWP appeared in this action the same day of arrest[4].  ECF No. 19.  CBWP moved to intervene and to vacate the Court's Rule B order, on the grounds that the Vessel's actual owner, CBWP, is *not* located out-of-state and Rule B therefore does not apply.  The motion to intervene was granted and Landlords filed a First Amended Complaint ("FAC") to avoid certain dismissal of the original complaint that invoked the wrong jurisdictional rule.  ECF Nos. 23, 24, 26 and unnumbered order dated March 16th, 2021.

---

[4] Through no action of Landlords, CBWP's owners did independently learn of the existence of this case shortly before the date the Vessel was boarded by Marshals, allowing CBWP to seek counsel in advance and rapidly assert its rights upon seizure.

CBWP moved to dismiss the FAC because state law precluded evictions and because Landlords, apparently, had filed a parallel action in state court.  ECF No. 31.  Landlords immediately dismissed their state court action and, ultimately, the Court adopted U.S. Magistrate Judge Levy's recommendation that the FAC be dismissed for failing to properly allege a maritime lien.  ECF Nos. 36, 38.  Landlords were given an opportunity to file a new pleading and filed a Second Amended Complaint ("SAC").  ECF No. 39.

In response to the SAC, CBWP filed the answer along with counterclaims for the issues discussed *supra*, alleging, *inter alia*, that Landlords' negligence caused the concrete block damage to its Vessel, creating an offset greater than the alleged maritime lien, and that Landlords had constructively evicted CBWP by failing to allow for safe access to the Vessel (a reference to the flooding and gate discussed *supra*).  Landlords filed two motions: one to dismiss the counterclaims on the grounds that the license agreement prohibited counterclaims and that CBWP was required to join the tenant controlling the concrete blocks, ECF Nos. 43, 45, 47, and one to request interlocutory sale of the Vessel based on an affidavit of one Helen Schwartz alleging that the Vessel constitutes a danger to the public.  ECF Nos. 42, 45, 46.  These motions were denied.  ECF No. 56 and unnumbered order dated August 22nd, 2022.  Landlords then answered the counterclaims denying liability principally on the basis that they are not liable for the actions of their tenant.  ECF No. 57.

The case proceeded to the Discovery stage.  CBWP served a set of interrogatories and requests for production[5], to which Landlords responded[6].  Landlords identified Aaron Abraham –

---

[5] Landlords have also propounded discovery requests upon CBWP to which CBWP has replied or (for more recent requests) will reply, and CBWP produced its principal owner for a deposition.
[6] An objection from CBWP that Landlords' responses were deficient was sent to Landlords on December 1st, 2022; no response to these objections has yet been received by CBWP.

the man to whom CBWP paid rent and signed an affidavit for substitute custodianship – as Manager of the Landlords and Helen Schwartz as the owner.  The response also provided a purported assignment agreement to 192 Morgan Realty, LLC, from the previous owner of the marina, assigning the license agreement relating to the Vessel to it.

CBWP issued notices of deposition for both Abraham and Schwartz.  Landlords initially resisted both depositions, but eventually agreed to a deposition of Abraham and were subsequently ordered to produce Schwartz after a hearing in which Landlords' counsel represented to the Court that Abraham was the Manager and Schwartz was a Member-Manager.  *See* Unnumbered Order Dated Dec. 7th, 2022.

CBWP deposed Abraham on December 12th, 2022.  Abraham Depo, p. 1.  During the deposition, over the undersigned's objections, counsel for Landlords instructed the deponent as to how to answer or directed him not to answer at all.  Abraham Depo, 35:10-11, 35:16-17 (directing not to answer), 100:25, 101:2, 102:15-17 (instructing limitation of answer).  Notwithstanding, Abraham conceded the following facts that give rise to this motion: 1) that neither he nor any entity which he controls is a Manager of Landlords, and he instead only works for Landlords to maintain their property and collect rent, 2) Helen Schwartz has never been to the property in question or seen the Vessel and does not actually manage the company in any meaningful way, 3) the Landlords are actually run by Schwartz' husband, Arthur Schwartz, who is the only Manager or Member he has *ever dealt with* in relation to the property, 4) that Abraham is the owner of the "substitute custodian," 5) that neither he, nor anyone working for him, know how to maintain the Vessel, and that he has not done *a single thing* to maintain the Vessel since being appointed substitute custodian, 6) that based on documentary exhibits (city tax records and an aerial photograph) and his personal knowledge, Morgan Williamsburg, LLC has no interest in the real

estate occupied by the Vessel, and 7) that he and his employer were aware by the end of 2019 that CBWP was the owner of the Vessel.  (Citations to testimony demonstrating the same *infra*.)

## V.    <u>Argument</u>

A.  <u>*Landlords Were Intentionally Dishonest with the Court in Order to Obtain Arrest of CBWP's Property Without Notice*</u>

The undersigned presumes the good faith of opposing parties and counsel at the start of any litigation, so when the original complaint in this case was reviewed and alleged that the current owners of the Vessel were actually the prior owners, it was presumed that this was an honest mistake due to there being no written assignment of the license interest from the prior owners to CBWP.  Indeed, Landlords pled ignorance of the same.  ECF No. 24, pp. 6, 7, ECF No. 24-6 (Schwartz Aff.), pp. 4, 5.

However, the deposition testimony of Aaron Abraham unambiguously demonstrates otherwise:

> Q.:    When did you become aware that Mr. Yanni [previous owner] no longer owned the boat?
>
> A.:    So, around August, 2019.
>
> Q.:    How did you become aware?
>
> A.:    I became aware that we had a new owner, Lindsay Cooper, Clear Blue Waters Project, and I believe I received rent in August.

Abraham Depo., 66:7-14

In fact, Landlords had been collecting monthly cash rent from CBWP's ownership until CBWP stopped paying in March 2020. Abraham Depo, 21:15-25, 22:3. And, this information was not a secret:

> Q.: Did you notify Arthur or Helen Schwartz of the new ownership?
>
> A·: They knew.
>
> Q.: By end of 2019?
>
> A.: Arthur Schwartz knew. Helen Schwartz, I'm not in communication with her.
>
> Abraham Depo., 66:15-21.

Accordingly, Landlords, at the time they filed their original complaint and motions to arrest the Vessel, had actual knowledge that: 1) they had not named the true owner of the Vessel, 2) the true owner, having not been named, would not be served papers to allow them to timely challenge their claims, and 3) the true owner was not out-of-state for the purpose of Rule B[7]. Landlords swore to the Court, under penalty of perjury, that they named the owners of the Vessel. ECF No. 1 (Verified Complaint), ¶ 9. They later swore to the Court that implies that they were simply confused as to the true owner. ECF No. 24-6 (Schwartz Aff.), ¶¶ 6, 15-22. Discovery, as quoted above, has proven that there was no confusion as to the owner of the Vessel, that their sworn statements are false, and that Landlords knew they were false; in other words, they are perjury.

This perjury directly prejudiced CBWP's interests by causing the Court to unwittingly order the seizure of its property without the prerequisites for such a seizure having been met, and

---

[7] To the extent that perhaps Landlords did not have actual knowledge of the state of formation of CBWP, they could have found that CBWP was a New York limited liability company with 2 minutes of Internet research on the Web site of the New York Secretary of State, and had a duty to do so before affirmatively representing to the Court that they believed the owners were out-of-state. *See* Rule 11(b) (requiring reasonable inquiry).

prevented CBWP from being able to immediately challenge the seizure, likely before it would have ever occurred, by obstructing their notice of the lawsuit.  This was compounded by the three summonses returned executed on the docket, which the Court may reasonably have relied upon to assure itself that the owners of the defendant *res* had fair notice.  ECF Nos. 9 – 11.  This foul play is sanctionable under Fed. R. Civ. P. 11(b)(1) and (4) for making a representation of fact they knew was not supported by evidence and for presenting a writing to the Court for an improper purpose, in addition to under the Court's inherent powers.

B.   *Landlords Were Intentionally Dishonest with the Court Regarding the True Individual Behind Their LLCs and Filed Affidavits Constituting Perjury*

Landlords' Rule 26 initial disclosures identified two parties as "likely to have discoverable information" under subsection (a)(1)(A)(i): Aaron Abraham and the company that was storing the concrete that fell on the Vessel.  Exhibit C, Landlords' Initial Disclosures.  These disclosures have not been supplemented.

The first interrogatory propounded by CBWP to Landlords was, "Identify fully each and every Member or Manager of both of the Counterclaim Defendants."  Exhibit B, p. 4.  Their response was "Helen Schwartz/Motarnavovos Trust, managed by Newtown Williamsburg Development (Aaron Abraham)." *Id*.

Further, Landlords filed a sworn affidavit of Helen Schwartz that she is "the manager" of Landlords.  ECF No. 42-2, p. 1.

On the basis of this representation, CBWP sought to depose Helen Schwartz and Aaron Abraham.  But Landlords objected to CBWP's deposition of Helen Schwartz because, they alleged, she had no knowledge relevant to the case.  CBWP moved to compel, ECF No. 73, and the parties appeared before Judge Levy for a ruling on December 7th, 2022.  During this hearing, Landlords strenuously argued that Schwartz should not be deposed because although Abraham and Schwartz are the Managers of Landlords, Schwartz leaves all operations to Abraham:

> 24:01: "[CBWP's counsel] noticed 2 of my managers: Mr. Abraham, who I discussed earlier in this conference call, and Helen Schwartz."
>
> …
>
> 24:38: "And Mr. Abraham, in my opinion, knowing what I know about this case, will be most knowledgeable about the issues in this case which are notice of a dangerous condition, my client's role as an out-of-possession landlord, the reason why there are 2 plaintiffs – even though I don't think that's a relevant issue – and the amount of our lien for dockage…"
>
> …
>
> 25:54: "If the issue is why is she [Helen Schwartz] a manager, but she was never there, so what, we can brief that out at the appropriate time."

Hearing Audio, December 7th, 2022 (Levy, M.J.), FTR Log #4:02-5:40.  The Court ordered the deposition of Schwartz notwithstanding[8].

However, the deposition testimony of Aaron Abraham unambiguously demonstrates that he is not the Manager[9], nor is his LLC the Manager, <u>nor is Helen Schwartz the Manager in any meaningful sense</u>:

---

[8] For reasons that become obvious in the next paragraph, CBWP has not taken Helen Schwartz' deposition.
[9] Even though Abraham is not a Manager of Landlords, they are still bound by his testimony because Landlords continue to assert that he is their agent.  Abraham Depo., 111:25 ("He is my agent.").

Q.:     How many LLC's are you a manager or a member of?

A.:     One.

Q.:     You are a member of one?

A·:     Yes.

Q·:     What is that LLC?

A.:     Newtown Williamsburg Development Company.

Q.:     And a manager of any others?

A.:     No.

Q·:     Okay. You have heard of 192 Morgan Realty, LLC?

A·:     I have, yes.

Q.:     And you are not a member or manager of that entity?

A.:     No.

Abraham Depo., 12:19-25, 13:2-10.

…

Q.      Does [Newtown Williamsburg Development Co., LLC] manage any other LLC's?

A.      No.

Abraham Depo., 47:2-4.

…

Q.:     Does Helen play any role in actually managing any of these companies?

A.:     I don't know. Not to my knowledge.

Q.:     Has she ever asked you to do anything personally regarding these properties?

A.:     I have no communication with her.

Q,:     When is the last time you have spoken with her?

A.:     No communication with her.

Q.:     You have never spoken with Helen Schwartz.  Have you ever seen her in person?

A.:     Never.

Q.:     Do you know if she exists?

- 15 -

A.:     I have reasonable -- I don't know if she exists. What can I say. To the best of my knowledge, she exists.

Abraham Depo., 104:25, 105:3-22


That is, despite having worked for Landlords and other companies owned by the same people for "Over a decade" (Abraham Depo, 9:20), Abraham has never met or spoken to Helen Schwartz, nor does he even have any direct knowledge that she actually exists. As it turns out, the true "Manager" of Landlords is one Arthur Schwartz, the apparent husband of Helen Schwartz; Helen has never been to the property and Abraham merely visits their properties on their behalf to collect rent, clean, and perform basic tasks to maintain the property:

Q.:     What did you do on the property during those multiple times a week?

A.:     Just basic property manager, and I made sure that the front was clean, the section of Lot 207, the alley over there towards the front, I made sure it was clean. If tenants had any complaints, I would call down the appropriate repair people, you know, make sure the rent was paid on time. Stuff like that.

Abraham Depo., 74:16-25, 75:2

…

Q.:     Has Helen Schwartz ever been to these properties as far as you know?

A.:     No.

Abraham Depo., 35:5-7.

…

Q.:     Has anyone other than you been to those properties that is working for or managing or assisting Helen Schwartz and her entities?

A.:     Arthur Schwartz, but many years ago. More than three years ago.

Abraham Depo., 38:7-12.

All of this is in direct contradiction to the affirmative representation made to Judge Levy on December 7th, 2022[10].  Hearing Audio, 24:01 ("[CBWP's counsel] noticed 2 of my managers: Mr. Abraham, who I discussed earlier in this conference call, and Helen Schwartz.").  Aaron Abraham is not a Manager of these business entities, and it seems that Helen Schwartz does not actually do any management either: her husband does.

It also makes clear that Landlords' initial disclosures pursuant to Rule 26(a)(1)(A)(i) failed to comply with the rule because it omitted Arthur Schwartz' name.  Exhibit C.  Even if Helen Schwartz were truly a Manager, and even if Aaron Abraham were too, and even if Arthur Schwartz is merely his wife's assistant, the testimony of Aaron Abraham makes clear that he has personal knowledge of facts relevant to this case and Landlords were required, but failed, to name him.

Further, Aaron Abraham's testimony makes clear that Landlords' first discovery response intentionally misrepresents the leadership of the company.  Exhibit B, pp. 4, 5 (Interrogatories 1 – 3).  These responses also allege that Aaron Abraham and/or his company is the manager (they are not), that Helen Schwartz is the manager (which appears highly doubtful), and fail to disclose the involvement of Arthur Schwartz.  *Id*.  As an aside, Aaron Abraham's deposition also makes clear that Landlords' responses to RFA 9 and 12 were lies.  Exhibit B, p. 14 (RFA 9: "Plaintiffs have no key to the gate" contradicted by Abraham Depo, 60:13-14; RFA 12: denial of knowledge contradicted by Abraham Depo, 56:20-25).

Accordingly, Landlords' counsel knowingly lied to the Court on the record on December 7th, 2022, violating Fed. R. Civ. P. 11(b) and N.Y. R. Prof'l C. 3.3(a), further violated Rules 11,

---

[10] With one exception: during the hearing, Landlords finally admitted that "[Helen] never set foot physically at the property."  Hearing Audio, 25:42.

26, and 33, and N.Y. R. Prof'l C. 4.1, by lying to CBWP.  These false statements stood to prevent CBWP's access to material witnesses had they not been uncovered as false, they have delayed discovery, and, as discussed *infra*, they have been used to support verified pleadings as well as motions asking the Court to seize and effect the interlocutory sale of CBWP's property.

C. *Landlords Were Intentionally Dishonest with the Court in the Verifications of Their Complaints, Their Motions for Substitute Custodianship, and Their Supposed Need for Interlocutory Sale of CBWP's Property*

On at least 3 occasions, Landlords supported their motions with sworn affidavits of Helen Schwartz asserting personal knowledge of the facts alleged in those motions.  ECF Nos. 24-6 (supporting motion for arrest), 28-1 (supporting motion for arrest), 42-2 (supporting motion for interlocutory sale).  Helen Schwartz also verified the original complaint and two amended complaints.  ECF Nos. 1, 25-1, 39[11].

Counsel for Landlords appears to have finally admitted Helen Schwartz' lack of personal knowledge during the December 7th hearing.  Hearing Audio, 25:54 ("…she was never there…").  But despite having nothing to do with the management of Landlords and never having seen the property in question or the Vessel, she signed a Verification swearing that she had her "own knowledge" of all the facts within the Second Amended Complaint based on her role as an "officer" of Landlords.  ECF No. 39, p. 10.  She signed an affidavit alleging "personal knowledge of the facts set forth" therein, including that "The Vessel is a health and safety hazard" (emphasis

---

[11] A seventh "affirmation" by Helen Schwartz was filed at 53-1, but this relates to a party other than CBWP.  Nevertheless, the Court may wish to look at this affirmation skeptically.

in original) because "Trash is strewn all over the Vessel" and "the Vessel is in a marked state of disrepair" and it "has no engines."  ECF No. 24-6, pp. 1, 7.  She reiterates that the Vessel "presents a significant health and safety hazard to anyone who ventures" onboard and that it "is a navigation hazard in the waterway."  *Id.*, p. 9.

She then swore, in another affidavit for which the basis of her knowledge was being "the manager" of Landlords, that "the Vessel is liable to deterioration, decay or injury," that the Vessel "has no engines," that it is "in disrepair and decaying," that it is "unpainted, windows are cracked and missing," that "it" is "at risk of injury," that CBWP hosts "large gatherings," that the Vessel "is an obstacle to navigation in the waterway," that "The Vessel is of little economic value," and that the Vessel is at risk of "capsiz[ing]," ECF No. 42-2, pp. 1, 4 – 6.

Obviously, Helen Schwartz, who has never seen the Vessel, or her property on which it is docked, or even communicated with Abraham (their only regular on-site agent and the only person present on behalf of Landlords in the last 3 years), does not have "personal knowledge" of any of these things, and falsely asserted that she manages Landlords when she does not.  Some of Schwartz' sworn statements were demonstrably untrue at the time they were made and further demonstrate her lack of personal knowledge: for example, the Vessel does indeed have engines and does not obstruct any waterway.  *See* Exhibit C, Aerial Photo of Property (showing that the Vessel is docked where it could not possibly obstruct water traffic); Exhibit D, Corbett Decl., ¶ 6. Other statements in her affidavit were demonstrated to be untrue by discovery: for example, it was alleged that CBWP was hosting wild illegal parties on the Vessel.  ECF No. 24-6, p. 6 (alleging CBWP breaks license restriction of 50 guest maximum and illegally serves alcohol).  But despite having security cameras running non-stop, Landlords were unable produce any video evidence in

response to CBWP's discovery demands showing more than *six* people in the access way to the Vessel. _See_ Exhibit D, ¶¶ 7, 8.

The deposition testimony of Aaron Abraham, the representations of defendant's counsel, and the inconsistencies between Helen Schwartz's submitted testimony and the Landlords' evidence demonstrate that she is very likely not any sort of "Manager[12]," but regardless, certainly does not have "personal knowledge" of the facts she swore to, given that she has never even been to the property or even spoken to the one person who works for Landlords who does go to the property: Aaron Abraham.

The consequences flowing from the filing of a fraudulent affidavit in support of a motion may range substantially.  In contrast, a party may invoke the *in rem* jurisdiction of the Court only by filing a verified complaint, _see_ Fed. R. Civ. P. B(1)(a), C(2)(a), and if the verification is a fraud, there is little alternative to striking it; otherwise, the case would be proceeding on the basis of a known fraud.  And, by striking a verification for a complaint that was required to be verified, the complaint itself is now defective and must be stricken.  When the reason the verification has been invalidated is because it has been uncovered that the affiant does not have personal knowledge and that the verification amounts to perjury[13], it supports not only striking the complaint, but denying leave to re-file.

---

[12] While one can be a "paper owner" of a company (hiring others to do all the work for you), one cannot be a "paper Manager" of an LLC under New York law.  Managers are assigned a substantial number of duties under NY LLC Law, Article 4.  The deposition testimony of Aaron Abraham is evidence that Helen Schwartz does not take on these roles.

[13] The undersigned is mindful that Helen Schwartz is an elderly person who *may* not have understood the papers that were put in front of her by her attorney, and her only mistake *may* have been signing papers without reading them.  But, for our purposes, it matters not what her intent was: the verification is bogus, it must be struck, and given the requirement that the complaint be verified, it, too, must be struck.

Further, Landlords have already obtained relief based on affidavits filed by Helen Schwartz; *e.g.*, the arrest of the Vessel.  And, Landlords have sought to have the Court *seize and sell* CBWP's unique Vessel on the basis of alleged safety risks sworn to in an affidavit that constitutes perjury.  That CBWP stood to lose its property rights on the basis of a false affidavit is outrageous.

There are also problems with other affidavits filed by Landlords.  For example, its motions to appoint a substitute custodian were supported by affidavits by Aaron Abraham alleging that his entity was prepared to take over custodianship of the Vessel.  *See*, *e.g.*, ECF No. 64-1.  But, his entity has no "facilities" at 200 Morgan Ave., *id*., ¶ 2, as the Vessel already occupies the only dock available at that address.  *See* Abraham Depo, p. 155 (Depo Exhibit A[14]).  He also has no knowledge of how to maintain boats generally, or the Vessel in particular:

Q.:     Okay.  Have you ever owned a boat?

A.:     No.

Q.:     Do you have experience maintaining boats?

A.:     No.

Q.:     Do you know how to maintain boats?

A.:     No specific knowledge, no.

Abraham Depo, 39:6-14

Additionally, Abraham's affidavit mentions "insurance" as if there is coverage for the Vessel, *id*, ¶ 4 and Exhibit A to the affidavit, but this was an attempt to mislead the Court: the

---

[14] The large boat visible at the bottom right is the Vessel.

attached certificate only covers "commercial general liability" and would not cover, *e.g.*, the Vessel sinking because of his negligence – and Abraham had no reason to think otherwise[15]:

> Q.:     Attached to that motion for a substitute custodian there was an insurance certificate. Are you familiar with that?
>
> A.:     Yes.
>
> Q.:     Did you obtain that certificate?
>
> A.:     I did.
>
> Abraham Depo., 45:18-24
>
> …
>
> Q.:     To the best of your knowledge, if, for example, you have neglected to operate the pumps properly and the boat sank, would this liability insurance cover that injury?
>
> MR. EPSTEIN:  Same objection.  If you know.
>
> A.:     Again, I just don't know the legal implications or the legal niceties and minutia.
>
> Abraham Depo., 50:21-25, 51:2-7

Even more, despite having been "substitute custodian" since the arrest of the Vessel on January 26th, 2021, Abraham has not done a single thing as custodian:

> Q.:     Did you ever operate any of the pumps on the boat?
>
> A.:     No.
>
> Q.:     Did you ever do any maintenance, management, repair, any other work on the boat?
>
> A.:     No.
>
> Abraham Depo., 51:22-25, 52:2-4

---

[15] Even if Abraham was truly ignorant of the fact that he was not insured to act as custodian of a vessel, Landlords' attorney, who submitted the affidavit and bears Rule 11 liability, assuredly knows the difference between a general liability policy and one that covers negligent custodianship of a boat.

In the week or weeks following the arrest, CBWP and Abraham had a verbal agreement that CBWP would maintain the Vessel, as Abraham was not able to, and this is why the Vessel is still floating.  Exhibit D, ¶¶ 3, 4.  However, the fact that Landlords are now seeking to appoint Abraham as substitute custodian *again*, ECF No. 64-1, despite no knowledge of how to maintain a boat, no "facilities" for doing so, and no insurance that covers injury to the Vessel, is simply a fraud designed to: a) gain possession of the Vessel, ostensibly in order to get leverage on CBWP to resolve the claims in this case, and b) extract $350 per day for nothing.

As illustrated above, <u>every</u> affidavit signed by someone associated with Landlords and filed in this case was intentionally misleading at best, or outright lies at worst.  It further strains credulity to think that opposing counsel did not know the true owners and managers of his clients, who upon information and belief, he has represented for more than 10 years.  Exhibit D, ¶ 9.  This further violates Fed. R. Civ. P. 11(b)(1) and (4) for making a representation of fact they knew was not supported by evidence and for presenting a writing to the Court for an improper purpose, in addition to relief available under the Court's inherent powers.

D.  <u>The Claim of Morgan Williamsburg, LLC is Frivolous</u>

CBWP has pondered for a long time why two entities are suing it over one license agreement.  The answer, it appears from discovery, is that CBWP leases a parcel of land that was finely subdivided, and some of the CBWP's leased land belongs to 192 Morgan Realty, LLC, while other parts of the land belong to Morgan Williamsburg, LLC.  *See* Abraham Depo, pp. 156, 157 (Depo Exhibits B & C); *see also* pp. 30 – 35 (confirming ownership of lots). But, Morgan Williamsburg, LLC has not even arguably stated a claim against CBWP for two reasons:

First, in 2014, when 192 Morgan Realty, LLC obtained its interest in the land, at or around the same time, Morgan Williamsburg, LLC obtained its interest.  But, at that time, the predecessor that sold both LLCs their land assigned the license agreement concerning the Vessel *only to 192 Morgan Realty, LLC*.  CBWP now knows this because it demanded Landlords produce "any documents tending to demonstrate that the lease/licensing agreement attached to the Second Amended Complaint was assigned … to either of Counterclaim Defendants."  Ex. B, p. 21 (RFP 4).  Only a single assignment – to 192 Morgan Realty, LLC – was produced.  Ex. B, pp. 26, 27; *see also* Ex. B, p. 5, Interrog. 6.  Therefore, to the extent that Morgan Williamsburg, LLC is trying to vindicate its contractual rights, it is not a party to any contract with CBWP or its predecessors, and this disposes of Counts 2 and 3 of the SAC as it pertains to Morgan Williamsburg, LLC.

Second, the evidence now available demonstrates that Morgan Williamsburg, LLC's land ownership does not include the dock or the water in which the Vessel floats.  *See* Abraham Depo, pp. 156, 157 (Depo Exhibits B & C); *see also* pp. 30 – 35 (confirming ownership of lots).  Morgan Williamsburg, LLC, in the relevant block, owns lots 160 and 220, but the dock and water are a part of lot 157, owned solely by 192 Morgan Realty, LLC.  This disposes of Count 4 of the SAC, which seeks unjust enrichment damages for "the benefit of docking the Vessel" because only 192 Morgan Realty, LLC can possibly have an interest in that claim.  This also means that Morgan Williamsburg, LLC, unambiguously does not have a *maritime lien* because one who does not own a dock cannot charge for dockage, which disposes of Count 1 of the SAC as it pertains to Morgan Williamsburg, LLC.  This leave zero claims remaining for this party.

Morgan Williamsburg, LLC was given three opportunities to plead its case.  It has failed to plausibly allege any arguable claims, even after the Court has warned it that if their third attempt turned out to be deficient, the "Court will be disinclined to grant plaintiffs yet another attempt to

properly plead their case." ECF No. 36 (Report & Recommendation), p. 14 (*adopted in full*, ECF No. 38). The Court should hold their claims to be frivolous and strike them under Rule 11[16].

### E.  *Counsel for Landlords Improperly Guided a Deponent*

During the deposition of Abraham, counsel for Landlords inappropriately interrupted the proceeding, and at least two types of these interruptions are sufficient to warrant discovery sanctions.

The first, a more minor breach, is that counsel twice guided the witness that his answer may constitute speculation and that he should refrain from doing so. Abraham Depo, 100:25, 101:2, 102:15-17. During a deposition, counsel is required to let the witness speak rather than guide the witness. An objection may be made for the record, but here, counsel's statements were not objections but rather instructions to the witness, prejudicing the outcome of the deposition.

The second, more material breach of discovery rules is that counsel *instructed the deponent not to answer*, when the rules unequivocally precluded him from doing so:

Q.:      Does Helen Schwartz own any other commercial real estate in New York City?
MR. EPSTEIN:  Objection. Don't answer. Get a ruling.

Abraham Depo., 35:13-18

"A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."

---

[16] While Rule 11 may be used to dispose of frivolous filings, the Court may prefer to use Rule 12(f); CBWP does not object to either path.

Fed. R. Civ. P. 30(c)(2).  But, no privilege was claimed here (just relevance and a privacy interest), no limitation had been ordered by the Court, and no Rule 30(d)(3) motion had been filed (or any other attempt to obtain a ruling from the magistrate).  CBWP objected on the record and gave opposing counsel an opportunity to withdraw the objection or seek a ruling, and even went so far as to go off the record to explain that the federal rules do not allow an attorney to instruct a witness not to answer except for extraordinarily narrow circumstances, and counsel declined CBWP's invitation to retract and allow "his witness" to answer.  Abraham Depo., 36:12-25, 37:2-21 (making clear that Landlords' counsel feels that objections of relevance or of "harassment and all that" are sufficient to allow an attorney to instruct a witness to non-answer[17]).

These instances prevented CBWP from obtaining discoverable evidence to which it was entitled, and would entitle CBWP to discovery sanctions by themselves.  Landlords have thus violated, and CBWP seeks sanctions under, Rule 37, as well as under the Court's inherent powers.

F.  _Landlords Have Refused to Follow the Rules of the Court Throughout This Case_

Although minor in comparison to deceiving the Court, Landlords have demonstrated on a repeated basis that they are unable or unwilling to follow the applicable Federal Rules of Civil Procedure, Local Rules, and individual rules.  This has contributed to frustrating CBWP's ability to clearly and quickly address the claims filed against them. CBWP collects all of these incidents below:

---

[17]  It is also clear that the question is neither irrelevant nor harassing.  Whether the owner of Landlords owns 2 properties or 200 properties may bear on whether the size of their business dealings precluded them from developing actual knowledge of many of the issues in play.  Asking for property ownership information, which is largely public record, is far from "harassment."

- Landlords *repeatedly* have misused "affidavits" (or affirmations) to argue points of law, sometimes without attaching a memorandum of law at all.  ECF Nos. 24, 42, 43. It is understood that this is commonplace in state courts in New York.  But in federal court, affidavits are *evidence*.  L.R. 56.2 ("[a]n affidavit is a sworn statement of fact based on personal knowledge stating facts that would be admissible in evidence at trial."), *see also* Fed. R. Civ. P. 56(c)(4) ("personal knowledge"), Fed. R. Civ. P. 43(c) (affidavits used for "evidence").  This is no mere harmless scrivener's error: the effect was to introduce the opinion of their lawyer as sworn evidence for the Court to consider.  This also violates the Court's Individual Practice Rules, Section IV (requiring memorandum).

- Landlords have attempted to introduce evidence gathered from settlement negotiations in violation of F.R.E. 408, *see* ECF No. 45, p. 13 (fourth point), and have generally put for incompetent or irrelevant "evidence" in support of their motions, *id.*, p. 11, fn. 6 (news clippings, expert testimony from lay witnesses, *etc.*).

- Landlords refuse to comply with the Court's Individual Practice Rules making text-searchability of filings mandatory (*see* chart on p. *i*), which is echoed by Judge Levy's Individual Rules (§ 1(A)) that incorporate the ECF filing rules (*see* § 23.3), and regularly submit documents that are upside-down, sideways, angled, cut off, or shrunk.  *See*, e.g., SAC (ECF No. 39) (entire complaint is sideways).

All of these failures increase the cost of litigation and generally make it more difficult effectively respond to Landlord's filings.  Attorneys should not have to turn monitors sidewise to review a complaint, and should be able to search through their opponent's documents for text rather than being forced to read through pages upon pages to find what they need (or figure out

technical means of curing these deficiencies).  On their own, these issues of non-compliance would not be a productive use of a Rule 11 motion (although their continuous repetition may deserve some court attention).  However, in combination with failure to follow rules about honesty, failure to follow rules about discovery, and failure to plead plausible claims, this non-compliance should be taken into account when the Court is considering the depth of sanctions to order here.

### G. *Serious Sanctions are Appropriate When a Party Repeatedly Misleads the Court*

Rule 11(c)(4) provides that:

> "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

As a general matter, in determining the appropriate sanctions under Rule 11, "factors such as (1) the wilfulness of the defendants, (2) the efficacy of lesser sanctions, (3) the duration of the noncompliance, and (4) whether the defendants had been warned of the risk of sanctions" *Hao Xin Liu v. Millenium Motor Sports, LLC*, 17-CV-6438, *2 (E.D.N.Y. Nov. 30th, 2020) (Kovner, J.).  In the context of failure to prosecute or comply with rules or orders and a request for a dispositive order, the Court has found that "[t]o determine whether dismissal is appropriate, a district court must weigh: (1) whether plaintiff 'caused a delay of significant duration'; (2) whether plaintiff was 'given notice that further delay would result in dismissal'; (3) whether defendant was 'likely to be prejudiced by further delay'; (4) whether dismissal would balance 'the need to alleviate court calendar congestion . . . against plaintiff's right to an opportunity for a day in court'; and (5)

whether lesser sanctions would be effective."  *Tennenbaum v. Madame Paulette LIC, LLC*, 20-MC-186, *2 (E.D.N.Y. Apr. 28th, 2021) (Kovner, J.), <u>*citing*</u> *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2nd Cir. 2004).

Similar factors are used to determine the appropriate nature and severity of sanctions under other rules; however, under Rule 16(f), fees and costs associated with the sanctionable conduct are *mandatory* unless the Court specifically finds that they would be inappropriate.  Rule 16(f)(2).

To summarize, CBWP asks the Court for sanctions for the following:

1.  False verifications by Schwartz of the SAC, and previous iterations of the complaint, affirming non-existent personal knowledge (Rule 11 + inherent),

2.  False affidavits by Schwartz attached to multiple motions to arrest and/or sell the Vessel alleging non-existent personal knowledge (Rule 11 + inherent),

3.  Intentionally omitting CBWP as a defendant and representing to the Court that the owners of the *res* had been named, while knowing that to be false, and using this to seize the Vessel without notice to its true owner (Rule 11 + inherent).

4.  Failure to disclose Arthur Schwartz as a witness in multiple discovery documents, and instead falsely naming Managers (Rule 37 + inherent),

5.  Lying to the Court as to the principals of Landlords during the hearing on December 7th, 2022 (Rule 11 + 16 + inherent),

6.  Misleading the Court in the motions to appoint a substitute custodian as to the willingness, ability, and insurance status of the substitute custodian (Rule 11 + inherent),

7. Filing frivolous claims by Morgan Williamsburg, LLC (Rule 11 + inherent),

8. Interference with deposition of Abraham by improperly directing the witness (Rule 37 + inherent),

9. Repeated minor violations of court/local/federal rules (inherent).

Starting at the first, the Verification of Landlord's operative complaint is based on an affidavit that was demonstrably without *any* personal knowledge, despite affirming the same. Because anything less than striking the Verification would be allowing the continuation of a fraud upon the Court, there is little doubt that the Court must strike the Verification.  Without a Verification, the Court also must then strike the complaint itself for failing to have a Verification as required by Fed. R. Civ. P. C(2)(a).  The only salient question is whether this dismissal should be with or without leave to re-file in this Court.

It is clear that Landlords' conduct was no accident: they operate small companies and did not "confuse" who their true operators are; thus, the conduct is willful.  It is unclear if the lesser of the possible sanctions will or will not discourage future misconduct.  The duration of the misconduct was the entire duration of the case thus far.  And although the Court has not explicitly "warned" Landlord that it may not file false affidavits, every attorney is on notice of the same before they walk in the courthouse door, and the Court should not indulge dishonest litigation by offering one free shot at storytelling.  If the false verifications were the only issue here, striking the SAC with leave to re-file *may* have been an adequate sanction.  But we are at just the first of 9 instances of sanctionable conduct; striking without leave to re-file is thus appropriate.

As to the second, third, and sixth requests for sanctions, Landlords have used the great power of the Court to issue instant seizures of property by invoking *in rem* jurisdiction, but did so

based on fraudulent representations to the Court.  The appropriate sanction here is to strike their motions for arrest and/or sale of the Vessel and vacate any orders granting any of those motions. The Vessel should be returned to the custody of CBWP.  If Landlords' complaint is struck without leave to refile, this would be the natural consequence anyway; if the Court does not strike without leave, the Court should still issue this sanction and CBWP will stipulate to keeping the Vessel within the District until Landlords' claims have been fully disposed.

As to the fourth, fifth, and eighth requests, these discovery-related failures caused substantial unfair interference with CBWP's ability to prosecute its counterclaims.  CBWP needs to establish what Landlords knew at the time of the concrete block incident as well as regarding the safety of access to the Vessel in order to obtain a favorable result, and hiding who is running the show is a clever, though here unavailing, means to do that.  Striking Landlords' answer to CBWP's counterclaims is a strong, but warranted, remedy in consideration of all of the circumstances present here.  The Court should also issue a penalty against Landlords payable to the Court for the conduct in the fifth instance where the lie was directed at the Court.

As to the seventh, the claims of Morgan Williamsburg, LLC should be dismissed with prejudice for failing to state a claim after repeated attempts were offered by the Court.

As to the ninth, and for each of the other 8 instances *in addition to* the remedies already requested *supra*, Landlords should be ordered to pay CBWP's fees and costs for the entirety of this action[18].  CBWP had to endure the burden of two years of litigation that was initiated by, and fueled with, fraudulent affidavits and assorted other misconduct, and this misconduct and the

---

[18] CBWP takes no position as to whether any monetary sanctions should be paid by Landlords' attorney or Landlords themselves.

consequences flowing therefrom is inextricably intertwined with *the entirety* of this litigation.  It is likely that even if the Court dismisses this case with prejudice, Landlords will still seek eviction of CBWP in state court, and CBWP will *again* have to bear the costs of litigation.  CBWP should not have to pay to defend itself twice because Landlords used bad-faith tactics and got caught.  This round should be on Landlords.


## VI.   Conclusion

No court should tolerate false statements from parties – especially represented parties – in proceedings in front of it.  Such conduct undermines the ability to of the court to do its job and obfuscates justice.  The Court should sanction Landlords in the strongest of terms.   For the foregoing reasons, the court should **grant** Plaintiff's motion for sanctions, dismiss the Complaint with prejudice, strike Landlords' answer to CBWP's counterclaims, grant default judgment on CBWP's counterclaims in the amount of $169,000 plus interest, and order Plaintiff to file documentation of attorney's fees and costs incurred, to be paid by Landlords upon approval by the Court.


Dated: Brooklyn, NY                                             Respectfully submitted,

January 11th, 2022


_____*/s/Jonathan Corbett*_____
Jonathan Corbett, Esq.
Attorney for Intervenor-Defendant CBWP
CA Bar #325608 (*pro hac vice granted*)
5111 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
E-mail: jon@corbettrights.com
Phone: (310) 684-3870
FAX:   (310) 675-7080